IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 16-20518 |
| | § | |
| WILLIAM LEE KNIGHT, *et al* | § | |
| | § | |
| DEBTOR(s) | § | CHAPTER 13 |

**RESPONSE TO ORDER REQUIRING PAMELA STEWART TO RESPOND WHY SHE SHOULD NOT BE REQUIRED TO RETURN THE BALANCE OF FUNDS PAID TO HER BY WILLIAM LEE KNIGHT AND SHERRY LYNN KNIGHT**
(Docket No. _____)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, *Pamela L. Stewart ("Stewart")*, and files this her Response to the Court's Order Requiring Pamela Stewart to Respond Why She Should Not Be Required to Return the Balance of Funds Paid to Her By William Knight and Sherry Lynn Knight (Docket No. 35), and would show as the Court as follows:

1. Whether intentional or not, the Court has been mislead about the facts involving Mr. and Mrs. Knight and Stewart, what Stewart did on behalf of Mr. and Mrs. Knight, the time frame around the facts in question, the amount of money that the Knights believe is owed to them, and what the State Bar has allegedly instructed Stewart to do.

2. This is not the first time Mr. Knight has misconstrued information to a bankruptcy court. In Mr. and Mrs. Knight's bankruptcy case no.15-31280 at docket no. 96, (See Exhibit "A") Attorney Ferdinand Cribbs stated in his Response to the Letter Addressed to the Honorable Karen Brown, United States Bankruptcy Judge Filed on November 6, 2015 (Docket No. 92):

> "Although the Letter contained the Debtor's view of the history of the loan transaction between the Briggs and the Debtor, the loan history as recounted by the Debtor contains numerous misstatements of fact and conclusions." Paragraph 2.

In paragraph 3 of the same Response, Mr. Cribbs points out to the Court that Mr. Vick had not withdrawn from his representation of the Knights nor had the Knights requested Mr. Vick to be removed. Mr. Knight had advised the Court in his letter (docket no. 92) that Mr. Vick was no longer representing them.

3. Pamela L. Stewart *was not hired by both* William Knight and Sherry Lynn Knight, nor did Mr. and Mrs. Knight *both* pay funds to Stewart. Only Mr. Knight has paid funds to Stewart. (See Exhibit "B"). To further support this fact, Mr. Knight states in the grievance he filed with the State Bar: "I paid Ms. Stewart $2300.00 to represent *me* and to file bankruptcy." (Emphasis added) (See Exhibit "C"). *Stewart was hired to file a Chapter 7 case for Mr. Knight.* (Emphasis added).

4. "They" also mislead the Court when they state that Stewart failed to prosecute "their" bankruptcy case for two months. On September 23, 2016, Mr. Knight sent Stewart an email stating that he had mailed the Questionnaire and retainer to my office. (See Exhibit "D"). I received Mr. Knight's paperwork and retainer check on or about September 29, 2016. On or about October 27, 2016, I learned new and very relevant facts that changed the whole scope of the bankruptcy filing (see paragraph 14 for an explanation) and advised Mr. Knight that he was not eligible to file a Chapter 13 as he was unemployed. (See paragraphs 13 and 14 below for an explanation as to why it took approximately 4 weeks.)

5. "They" did not repeatedly contact me for two months regarding progress of "their" bankruptcy case. The only contact I had with Mrs. Knight was in January 2016 which pertained to their previous bankruptcy case. Mr. Knight did call my office several times between September 23, 2016 and October 27, 2016 inquiring when his paperwork would be ready for signing. (This is evidenced in the Complaint (page 5) he filed with the State Bar and is attached as Exhibit "C".) When Mr. Knight sent in his paperwork and retainer fee in September, he failed to inform me or my office that his situation had drastically changed since our meeting on June 23, 2016. Had I known

he would need to file a Chapter 13, I would never have taken the case as I do not practice in the Corpus Christi Division. Even though he had several opportunities during the many phone calls to my office to inform me or my assistant of the change in his circumstances, he failed to do so until October 27, 2016. Mr. Knight's failure to inform us of the changes in his circumstances caused me and my office to perform unnecessary work on his behalf. Even after I told him he was not eligible to file a Chapter 13 due to his unemployment, he did not advise me of any change in his circumstances. His reply was to refund him his money - which I promptly did.

6. I did not delay in refunding the money as Mr. Knight has advised this court and the State Bar. A check was mailed to Mr. Knight the next day which was on or about October 28, 2016. He claims he never received it; however, the check has never been returned to me nor has it been cashed. A second check was mailed by certified mail to Mr. Knight on or about January 13, 2017. I wanted to submit proof to the State Bar that Mr. Knight had received my second check so I periodically checked the USPS website to determine if the check had been delivered. After several days had gone by and he hadn't picked up the check, I had to call Mr. Knight and request him to pick up the check from the post office.

7. The State Bar did not and has not told me to refund "them" their money. Nor has the State Bar told me to refund Mr. Knight his money. I did it on my own accord and because it was the right thing to do. However, I did retain $200.00 to compensate for some of the time my office spent on his file.

8. "They" did not write the State Bar regarding my representation of "them" during "their" bankruptcy and my delay in refunding "their" money. Mr. Knight filed the complaint with the State Bar. She did not participate in the grievance and would have no basis for filing a grievance against me since she did not retain my office. Further, Mr. Knight's Questionnaire states that he and

Mrs. Knight were separated. This is consistent with what he advised me at our meeting on Junde 23, 2016.

9. Nor do I owe "them"or Mr. Knight $300.00 as they advised the Court. The $200.00 I withheld covers only a fraction of the time actually spent on his case. Actual time spent on his (Chapter 7) file totals $705.00 (1.3 hours attorney time at $450.00 per hour and .80 hours of paralegal time at $150.00 per hour). Further, they are forgetting they greatly benefitted from my *free* advice to them on how to attack Larry Vick's fee application which resulted in Judge Brown reducing Mr. Vick's fees by $7,981.00.

## BACKGROUND

10. Stewart met with both Mr. and Mrs. Knight in January of 2016 in her Houston office while they were represented by Larry Vick in case no. 15-31280-H5-13. The purpose of the meeting was to discuss the possibility of Stewart taking over their case. During that meeting, the Knights were complaining about how Mr. Vick handled their case, the loss of their business and homestead, and the pending Fee Application Mr. Vick had filed.. I spent approximately 1.5 hours with the Knights discussing their case, reviewing Mr. Vick's fee application and time records, and advising them of the best ways to object to the fee application. I identified lumped entries in Mr. Vick's time records for them. They even filed the document I wrote "lumping" on as an exhibit to their objection to the fee application. Judge Brown reduced Larry Vick's attorney fees and costs by $7,981.00. I did not charge them a fee for this visit even though I only give a "free" thirty (30) minute consultation. Nor did I charge them for their court documents I downloaded from Pacer.

11. The next time I heard from either of the Knights was in June of 2016 when Mr. Knight contacted me regarding filing for bankruptcy. I met with Mr. Knight in my Houston office on June 23, 2016 and determined a Chapter 7 case was the only Chapter he was eligible to file since

(a) he was unemployed and (2) he and his wife were no longer together and he did not have her income.. I quoted him a fee of $2,304.00 which included the court filing fee, credit reports, and expenses.

12. On September 23, 2016, (three months after we met and determined he should file a Chapter 7 as he was unemployed and was current in his payments) Mr. Knight sent an email (see Exhibit "D") to me advising he sent the Questionnaire and payment (that day).

13. His questionnaire and cashier's check in the amount of $2,300.00 was received on or about September 29, 2016. It is our office policy to process a file in the order that a file comes into the office. Once we start working on a file and discover there is missing documentation, the file goes to the back of the line again.. Since, Mr. Knight's case was a Chapter 7 and he had not advised our office of any changes in his circumstances, his file was placed in line behind the other files for processing. Additionally, because he failed to (a) fill in numerous questions in the Questionnaire, (b) provide tax returns, (c) proof of any income for the preceding six months, and (d) provide his credit counseling certificate, his file would have gone to the end of the line again.

14. In early October Mr. Knight started calling the office every couple of day to see if his paperwork was ready for filing. He was advised there were several files in front of his before we could process his paperwork. On October 27, 2016, he talked with Stewart and stated he was about to lose his home and car. At that point Stewart instructed her paralegal to stop working on the files he was currently working on and to start working on Mr. Knight's schedules. After reviewing Mr. Knight's Questionnaire (which states he is unemployed), his file and my notes, Stewart called Mr. Knight and advised him that in order to save his home and vehicle he would need to file a Chapter 13 (unless he could bring them current right away - then he could file a 7). He advised me that he wanted his money back and I advised him I would withhold fees for the time spent on his file.

15. On or about October 28, 2016, I issued a check (#11782) and mailed it to Mr. Knight at 2483 Arkansas, Ingleside, TX 78362, the address listed on the paperwork he provided me. Mr. Knight apparently never received this check. (As of April 24, 2017, the check has not cleared my bank nor has it been returned to me by the post office.) In early November Mr. Knight started calling regarding his refund. I explained to him that the check had been mailed and to give it a few more days. He called me again on either November 9th or November 14th while I was in the Victoria office and stated he was sending a courier over to pick up the check. I advised him that my checks are kept in my Houston office. He said he would call me the next day and send a courier to the Houston office to pick up the check. But I never heard from him, so I assumed he had received his check. It wasn't until mid December when I received the grievance he filed with the State Bar that I learned he had not received the check. I contacted the State Bar investigator and he suggested that I send a check by certified mail and attach a copy of the return receipt showing that he had received the check when I filed my Response to the grievance.

16. Due to the Christmas holidays, my eye surgery on December 27th and complications from my eye surgery, I was not able to return to the office as early as I had planned. On January 13, 2017, I mailed to Mr. Knight another refund check by certified mail which he did not pick up from the post office until I called him and advised him it was waiting for him at the post office (even though the post office left him a notice to pick it up).

## CONCLUSION

17. Mr. Knight has filed a copy of both of my checks in this case without redacting my routing number and/or account number (Docket no. 36-1, pages 11 and 12 and at Docket No. 36-2 page 1). It is now necessary for me to file a Motion to Redact the routing and account numbers on both of my checks now that they are public record. For clarification and to answer Mr. Knight's

question "Void on a check never received??" regarding the copy of the check marked Void that is filed at docket no. 36-1 page11, I make a copy of every check I write. Because Mr. Knight did not receive the check, I wrote Void on my copy of the check so that I know the check should not clear my bank account.

18. Further, Mr. Knight's actions including failure to disclose critical information to me and my office has caused me substantial harm. I have had to spend a substantial amount of time (a) in responding to his State Bar Grievance, (b) preparing an Emergency Motion Requesting Additional Time to Respond to this Court's Order, (c) responding to this Court's Order, (d) talking with the State Bar's Ethics Hotline regarding what I can and cannot disclose to the Court, (e) and now will have to prepare a Motion to Redact the information on my checks due to his filing them with the Court. All of this is in addition to the time he caused me and my office to spend on his file. The time I have spent in dealing with Mr. Knight's actions and misrepresentations has impacted my ability to represent my other clients in a manner that they deserve.

19. The statements Mr. Knight has made to this Court do not align with the statements Mr. Knight has made in writing to the State Bar. Mr. Knight has distorted the facts to this Court and to the State Bar. Further, it appears Mr. Knight has a problem with being forthright with me, the State Bar, and with this court. He apparently has a problem telling the truth as there are a number of inaccuracies in his current schedules filed with the Court including how long he has worked at a job. In his 2015 case he stated on Schedule I that he worked as a machine tech at Hurfus for 8.5 years. He was unemployed when he met with me in 2016. In this case he states on Schedule I that he has worked as a printer with TPG Copy for 20 years.

20. While I believe Mr. Knight has waived any attorney client privilege based on the (grievance ) paperwork filed he has filed in this bankruptcy case and considering his misstatements

to this Court and to the State Bar regarding my conduct and professionalism, out of an abundance of caution I am not attaching his Questionnaire to this Response. However, should the Court instruct me to produce his questionnaire, I will do so.

21. Mr. Knight has been unjustly enriched at my expense by (a) the reduction in my fees and (b) the substantial reduction in Larry Vick's fees due to my (free) advice.

22. Despite what Mr. Knight says and/or believes, at no time did I refuse to refund him his money. I am very cognizant of client's financial situations - especially when they come to see me regarding bankruptcy, so I chose to reduce the amount of money I withheld from Mr. Knight's refund. I was attempting to be fair. No good deed goes unpunished.

WHEREFORE, PREMISES CONSIDERED, I pray this Response answers any concerns the Court may have regarding my actions in this matter.

Date: April 24, 2017.

Respectfully submitted,

/s/ Pamela L. Stewart
**Pamela L. Stewart**
Admissions No. 13768; TBN: 19218100
4635 Southwest Freeway, Suite 610
Houston, TX 77027
TEL: 713-622-3893
FAX: 713-622-7908
Pam@plstewart.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was served upon the debtor, the Trustee, the U.S. Trustee, on April 24, 2017.

/s/ Pamela L. Stewart
Pamela L. Stewart